ELLIS ET AL. *v.* HAINES.

[No. 19,428. Filed March 21, 1963. Rehearing denied April 25, 1963.]

*Richard T. Lineback,* of Greenfield and *John H. Baldwin,* of Indianapolis, for appellants.

*George P. Dickmann* and *Dickmann & Dickmann* of Greenfield, for appellee.

MOTE, P. J.—This appeal comes to us from a judgment rendered by the regular judge of the Hancock Circuit Court on a jury verdict for the sum of sixteen thousand ($16,000.00) dollars on a claim for services rendered for a period of 1,118 weeks by claimant to decedent during his life time.

The evidence presents the following situation. Appellee, as a farm hand, had been in the employment of the decedent, Edwin S. Ellis, but he terminated such employment in 1935 to take another job near Dublin, Indiana. The decedent went to Dublin, Indiana, in 1935, to, and did, re-employ appellee as his farm hand. Appellee started working for decedent in 1936, and continued in such employment until the death of decedent in April, 1958. Appellee received twenty-one thousand, three hundred and twenty ($21,320.00) dollars remuneration and some miscellaneous benefits for the entire twenty-two (22) year period. Appellee

commenced this litigation against Otis Ellis and Maude Hamilton, co-administrators of decedent's estate, to recover a balance which he alleges decedent still owes him by reason of his contract with the decedent. The action was tried on the following claim:

"Estate of Edwin S. Ellis, Deceased, To Carl M. Hines, Dr.

1. For labor by claimant for decedent from about October, 1936 to about October, 1941, or 260 weeks, at $30.00 per week less $10.00 per week paid by the decedent, leaving a balance due claimant for services of $20.00 per week, or a total balance due claimant for services rendered decedent for 260 weeks in the sum of $5,200 for services as a farm laborer, which services were performed by claimant for decedent, at decedent's special instance and request and upon decedent's promise to fully recompense claimant in the sum of said balance of ........ $5,200.00

2. For labor by claimant for decedent from about October, 1941 to about October, 1947, or 312 weeks, at $35.00 per week, less $15.00 per week paid by decedent, leaving a balance due claimant for said services of $6,240, which sum is due claimant for services performed as a farm laborer by claimant for decedent at decedent's special instance and request and upon decedent's promise to fully recompense claimant in said balance of $6,240.00

3. For labor by claimant for decedent from about October, 1947 until about October, 1949, or 104 weeks, at $40.00 per week less $20.00 per week paid by decedent, leaving a balance due claimant for said services of $20.00 a week, or a total balance for said 104 weeks of $2,080 for said services as a farm laborer performed by claimant for decedent at decedent's special instance and request and upon decedent's promise to fully recompense claimant in the sum of said balance of ... $2,080.00

4. For labor by claimant for decedent from about October, 1949 to about October, 1954, or 260 weeks, at $40.00 per week, less $25.00 per week

paid by decedent, leaving a balance due claimant for said services of $15.00 per week, or a total balance of $3,900 due claimant for said services as a farm laborer performed by claimant for decedent at decedent's special instance and request and upon decedent's promise to fully recompense claimant in said balance of .......... $3,900

5. For labor by claimant for decedent from October, 1954 to April, 1958, or 182 weeks, at $40.00 per week less $30.00 per week paid by decedent, leaving a balance due claimant for such services of $10.00 per week, or a total balance of $1,820 for services as a farm laborer performed by claimant for decedent at decedent's promise to fully recompense claimant in said balance of ... $1,820

6. That said services above set forth so performed by claimant for said decedent were reasonably worth the amount for said periods of time as above set forth in the above-mentioned paragraphs, were reasonably worth the amounts so claimed in each paragraph during the time in each paragraph mentioned, and said claimant so performed said services for decedent as a farm hand at the wages actually paid by decedent upon decedent's promise to this claimant that if claimant would faithfully stay with the decedent as such farm hand at said wages so paid, he, said decedent, would fully take care of claimant and amply reward claimant at decedent's death either by decedent's will or by a deed for the difference between the wages actually paid and their reasonable value and for the continued faithful service of claimant to decedent until decedent's death; that said decedent died without having kept his promise and/or without making any provision for such compensation for claimant's faithful services either by decedent's will or by any conveyance of real estate to claimant, that said decedent was and/or his estate is now justly indebted to this claimant in the total sum of ........$19,240."

Appellants filed a motion to strike the sixth rhetorical paragraph of the claim, and in support thereof,

strongly urge that appellee incorporated two theories in one paragraph of his claim. They assert that the first five rhetorical paragraphs contain an express contract theory, while the sixth paragraph presents an implied contract theory. This premise is set forth as ground for appellants' motion to strike the sixth paragraph, the overruling of which is made a ground for a motion for new trial. It should be pointed out that this was a claim against an estate and the rule is well established that strict rules of pleading are not necessarily applicable to claims against an estate. A claimant may allege an express contract and recover on an implied contract, or he may allege an implied contract and recover on an express contract. *Weir* v. *Lake* (1942), 112 Ind. App. 318, 41 N. E. 2d 828, and cases cited therein. Unless prejudice is shown the overruling of a motion to strike is not ordinarily reversible error. *Siebeking et al.* v. *Ford, Administratrix, etc.* (1958), 128 Ind. App. 475, 148 N. E. 2d 194, and cases therein cited. Since appellee could recover on either theory, no prejudice is shown, and it follows that there was no error in overruling the motion.

Furthermore, appellants place a construction on rhetorical paragraph six of the claim which we deem to be unwarranted. The theory of the claim is a contract for the reasonable value of labor performed. Appellee's claim might be regarded as incomplete were it not for paragraph six. The first five rhetorical paragraphs allege the performance by appellee of labor for decedent at his special instance and request during different periods of economic conditions, therefore the reasonable value of the labor performed was different for each of said periods.

Appellants also contend there was lack of sufficient evidence to support the verdict. To support this proposition, appellants assert that there was a lack of evidence establishing a contract between decedent and appellee prior to 1943, therefore no recovery could be allowed for the years between 1936 to 1943.

In Appellants' Brief we find the following statements:

> "It is obvious that the claimant, up to the year 1943, had no contract or promise at all with the decdent, .. ."

> "As a consequen(s)e, the jury went beyond the evidence supporting the pleading when they awarded a verdict of $16,000.00, because the best that they could do for the claimant, was to award him the difference in wages from 1943 on, which amounted to the sum of $11,920.00 at the maximum."

In our minds, this is tantamount to an admission that appellee is entitled to recover judgment covering the period from 1943 to 1958. We do not find any significant distinction in the evidence for the period after 1943, and the period prior to 1943. If there is any substantial evidence from credible witnesses, or permissive inferences to be drawn therefrom, this Court cannot disturb the judgment below for the reason alleged.

The record shows that decedent traveled to Dublin, Indiana, to procure appellee to return to him as a farm hand. Reasonable and permissive inferences could be drawn from other evidence in the record as to the understanding then entered into between decedent and appellee, and from decedent's failure to fulfill his promise to provide ample and suitable reward to appellee for the differ-

ence in what he was paid and the pay to which he reasonably was entitled.

Our courts have held on numerous occasions that, although the elements of intention to pay on one hand, and expectations of compensation on the other, must be found to exist, such elements, like ultimate facts, may be inferred from the relation and situation of the parties, the nature and character of services rendered, and any other facts and circumstances which may be reasonably said to throw light upon the question. *First Bank & Trust Company of South Bend, Executor of Estate of Spiro* v. *Tellson* (1954), 124 Ind. App. 478, 118 N. E. 2d 496; *Garrett* v. *The Estate of Christian Hoctel, Deceased* (1957), 128 Ind. App. 23, 142 N. E. 2d 449. *Transfer denied.* Any reasonable person, be he juror, judge or layman, would require it seems to us, but little evidence to conclude that the cash wages paid to appellee were most meager for the times involved. Confronted with such a situation we think the jury in view of the evidence before it, was justified in returning a verdict for sixteen thousand ($16,000.00) dollars.

There was but little conflicting evidence as to the value of the services rendered by appellee to the decedent before his death, over a period of approximately 1,118 weeks. There was sufficient, substantial evidence which tended to prove the material allegations of appellee's claim and to show, and the jury could have inferred, that appellee was entitled to recover the amount assessed by it. This Court, in this instance, cannot say that the recovery was too large or that the verdict was not sustained by sufficient evidence. To hold otherwise would require us to weigh the evidence and this we cannot do. The trial court was vested with such authority, and

since he denied the motion for new trial, it must follow that he decided on this matter. There was substantive evidence tending to support the verdict. It was not contrary to law; and it cannot be said that it is not sustained by sufficient evidence.

The jury by their verdict furnished the answer to many of the questions raised in this Court and having done so, with the court's apparent approval, by overruling the motion for new trial, these matters will not be reviewed, particularly since there is ample evidence to support the verdict.

Appellants contend that reference to decedent as a "bachelor farmer" in hypothetical questions and at other times during the trial was reversible error. The record shows that appellants objected to the hypothetical question for reason that the question assumes seven (7) facts which had not been proved. Appellants, after inquiry by the trial court, then specifically named the seven facts which had not been proved, in none of which was the use of the term, "bachelor farmer." Since appellants did not object to the use of the term, in the trial court, they cannot raise the question on appeal. To make an objection to a question available, the grounds of the objection must be stated and pointed out to the trial court, and other and different grounds will not be considered on appeal. *The Louisville, New Albany, and Chicago Railway Company* v. *Rush* (1890), 127 Ind. 545, 26 N. E. 1010; *London and Lancashire Insurance Company, Limited, of London* v. *Mason, et al.* (1929), 90 Ind. App. 305, 168 N. E. 702. Appellants not only failed to object to the use of the term, "bachelor farmer," but first elicited evidence of the decedent's marital and occupational status. Furthermore, appel-

lants' argument against the use of such term is not convincing as to its prejudicial character.

Appellants, in their objection, also contended that the use of a hypothetical question is not the proper way to prove the value of services in the community. However, since this proposition was not argued in their brief, it must be deemed waived. The other grounds specified in the objection have no merit in view of the evidence.

Much of Appellants' Brief is devoted to the matter of instructions to the jury. Ten preliminary instructions were given by the court without objection. At the conclusion of the evidence, appellee duly tendered instructions numbered one (1) to eleven (11), both inclusive, of which the court gave instructions two (2), four (4) and eleven (11), and refused the others. Appellants duly tendered instructions numbered from one (1) to five (5), both inclusive, which were refused; and the court gave his own instructions numbered eleven (11) to twenty-eight (28), both inclusive.

No appealable question has been saved under Rule 1-7 of the Indiana Supreme Court as to the giving of appellee's instructions or the giving of the court's own instructions, because no specific objections were made by appellants prior to the argument, filed in open court and made a part of the record.

Appellants assert that error was committed by the trial court in refusing to give their instructions numbered from one (1) to five (5), both inclusive, and urge that their rights were thereby prejudiced. A careful study of all the instructions leads us to the conclusion that the jury were fairly and impartially instructed on the theory of the action as formed by the issues, the evidence and the law ap-

plicable thereto. While the instructions tendered by appellants and refused by the court may have been proper, we find that other instructions given adequately covered the law and evidence in the case. It is not error to refuse an instruction when the subject thereof is fully covered by instructions given. *Aetna Casualty & Surety Company* v. *Acme-Goodrich, Inc., Etc.* (1959), 130 Ind. App. 432, 159 N. E. 2d 310; *Armstrong Cork Company* v. *Maar* (1953), 124 Ind. App. 105, 111 N. E. 2d 82, *Rehearing Denied*, 112 N. E. 2d 240. Appellants do not present convincing reasons or facts, authorities or argument upon which to predicate errors in the refusal to give their tendered instructions.

From what we have said, it follows that no error has been presented which calls for reversal of the trial court.

Judgment affirmed.

Hunter, Kelley and Pfaff, JJ., concur.

NOTE.—Reported in 188 N. E. 2d 835.